UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80041-CIV-SINGHAL

JASON PHILLIPS, HOPE PHILLIPS,
and SYDNI PHILLIPS,

    Plaintiffs,

v.

KEYSTONE MOVING GROUP, LLC, *et al.*,

    Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon the Motion to Dismiss filed by Defendant Philadelphia Indemnity Insurance Company. (DE [21]). Plaintiff has filed a response in opposition (DE [24]) and no reply was filed. The matter is now ripe for review.

Phillips filed this action against Keystone Moving Group, LLC ("Keystone") and Philadelphia Indemnity Insurance Company ("Philadelphia") and others, alleging that Keystone engaged in illegal brokering of a move of household goods from Florida to Texas in violation of 49 U.S.C. § 14916 (Unlawful Household Goods Brokering). Count III of the Amended Complaint seeks to recover on a transportation broker's bond (DE [21-1]) issued by Philadelphia, as surety, on behalf of Keystone, as principal. Philadelphia moves to dismiss on the ground that the bond does not cover the conduct alleged to have been committed by Keystone.

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The bond issued by Philadelphia is a federally mandated Form BMC-84[1] that contains the following condition:

> NOW, THEREFORE, the condition of this obligation is such that if the Principal shall pay or cause to be paid to motor carriers or shippers by motor vehicle any sum or sums for which the Principal may be held legally liable by reason of the Principal's failure faithfully to perform, fulfill, and carry out all contracts, agreements, and arrangements made by the Principal while this bond is in effect for the supplying of transportation subject to the ICC Termination Act of 1995 under license issued to the Principal by the Federal Motor Carrier Safety Administration, then this obligation shall be void, or otherwise to remain in full force and effect.

(DE [18-1]).  The bond's whereas clause specifies that the bond is written to assure[2] compliance with 49 U.S.C. § 13906(b) and the rules of the Federal Motor Carrier Safety Administration:

> WHEREAS this bond is written to assure compliance by the Principal as either a licensed Broker or a licensed Freight Forwarder of Transportation by motor vehicle with 49 U.S.C. § 13906(b), and the rules and regulations of the Federal Motor Carrier Safety Administration, relating to insurance or other security for the protection of motor carriers and shippers, and shall inure to the benefit of any and all motor carriers or shippers to whom the Principal may be legally liable for any of the damages herein described.

---

[1] The bond satisfies the financial responsibility requirements for transportation brokers set forth in 49 U.S.C. § 13906.  The Form BMC-84 is required by governing regulations. 49 C.F.R. § 387.307

[2] Interestingly, the bond uses "assure" while the regulation uses "ensure".

(DE [18-1]).

Philadelphia argues that the bond does not apply in this case because Plaintiffs' Amended Complaint alleges that Keystone failed "to provide a licensed and insured carrier of household goods to transport" their belongings "under a valid bill of lading…." (DE [18], ¶¶ 128, 131). Philadelphia contends that Plaintiffs do not allege that Keystone failed to pay a motor carrier and, therefore, the bond does not apply.

Plaintiffs argue that they paid Keystone $3000 to move their household goods, but the goods were never moved.  Furthermore, Plaintiffs allege that the movers arranged by Keystone demanded payment of an additional $4,000 and drove off with Plaintiffs' belongings when they did not pay.  Plaintiffs argue that by not hiring a licensed and insured carrier to conduct the move, Keystone failed "faithfully to perform, fulfill, and carry out [the] contract[], agreement[], and arrangement[]" it made with Plaintiffs and the bond, therefore, applies.

"[S]urety bonds must conform to the terms of their governing statutes and regulations."  *RLI Ins. Co. v. All Star Transp. Inc.,* 608 F.3d 848, 850 (D.C. Cir. 2010). Section 13906(b) provides in relevant part as follows:

> **(b) Broker financial security requirements.**—
>
> **(1) Requirements.**—
>
> **(A) In general.**--The Secretary may register a person as a broker under section 13904 only if the person files with the Secretary a surety bond, proof of trust fund, or other financial security, or a combination thereof, in a form and amount, and from a provider, determined by the Secretary to be adequate to ensure financial responsibility.
>
> **(B) Use of a group surety bond, trust fund, or other surety.**--In implementing the standards established by subparagraph (A), the Secretary may authorize the use of a group surety bond, trust fund, or other financial security,

>> or a combination thereof, that meets the requirements of this subsection.
>
> **(C) Proof of trust or other financial security.** -- For purposes of subparagraph (A), a trust fund or other financial security may be acceptable to the Secretary only if the trust fund or other financial security consists of assets readily available to pay claims without resort to personal guarantees or collection of pledged accounts receivable.
>
> **(2) Scope of financial responsibility.** —
>
> **(A) Payment of claims.** -- A surety bond, trust fund, or other financial security obtained under paragraph (1) shall be available to pay any claim against a broker arising from its failure to pay freight charges under its contracts, agreements, or arrangements for transportation subject to jurisdiction under chapter 135 if —
>
> > **(i)** subject to the review by the surety provider, the broker consents to the payment;
> >
> > **(ii)** in any case in which the broker does not respond to adequate notice to address the validity of the claim, the surety provider determines that the claim is valid; or
> >
> > **(iii)** the claim is not resolved within a reasonable period of time following a reasonable attempt by the claimant to resolve the claim under clauses (i) and (ii), and the claim is reduced to a judgment against the broker.

49 U.S.C. § 13906(b). The governing regulation, 49 C.F.R. § 387.307, provides that "[t]he surety bond or the trust fund shall ensure the financial responsibility of the broker by providing for payments to shippers or motor carriers if the broker fails to carry out its contracts, agreements, or arrangements for the supplying of transportation by authorized motor carriers."

The plain language of § 13906(b) seems, at first glance, to limit coverage of a broker's bond to a broker's failure to pay freight charges. 49 U.S.C. § 13906(b)(2)(A) (the

4

bond "shall be available to pay any claim against a broker arising from its failure to pay freight charges under its contracts, agreements, or arrangements for transportation"); *see also Vantage Logistics, LLC v. Dewar Nurseries, Inc.,* 2020 WL 6484054 (S.D. Ohio Nov. 3, 2020) (broker bonds on Form BMC-84 "are limited by the statute mandating their existence to claims relating to a broker's failure to pay freight charges"). The statute, however, contains a list of three instances when a bond would be available to cover unpaid freight charges: (i) when the broker consents, (ii) when the broker ignores a valid claim, and (iii) when a valid claim against the broker is reduced to judgment. But the statute does not limit liability under the bond to non-payment of freight charges. Furthermore, the language of both the regulation and the bond clearly contemplates coverage for more than non-payment of freight charges. The regulation establishes the evidence of security a broker must present:

> (b) Evidence of security. Evidence of a surety bond must be filed using the FMCSA's prescribed Form BMC 84…. The surety bond or the trust fund shall ensure the financial responsibility of the broker by providing for payments to shippers or motor carriers if the broker fails to carry out its contracts, agreements, or arrangements for the supplying of transportation by authorized motor carriers.

49 C.F.R. § 387.307. The regulation does not specify that Form BMC-84 bonds are limited to payment of unpaid freight charges but, rather, specifies that the bonds provide surety for the broker's failure to supply transportation by authorized motor carriers. Likewise, the condition of the bond refers specifically to "any sum or sums for which the Principal may be held legally liable by reason of the Principal's failure faithfully to perform, fulfill, and carry out all contracts, agreements, and arrangements made by the Principal while this bond is in effect." (DE [18-1]). The bond is not specifically conditioned on the principal's failure to pay freight charges.

While supremacy of the text rules, other higher courts have identified the legislative history of the pertinent sections at issue here. "The legislative history of [Section 10927(b)] of the [A]ct clearly reveals that the primary purpose of Congress in regulating motor transportation brokers is *to protect [motor] carriers* and the traveling and shipping public against dishonest and financially unstable middlemen in the transportation industry." *Milan Exp. Co. v. W. Sur. Co.,* 886 F.2d 783, 786 (6th Cir. 1989) (quoting *Clarification of Insurance Regulations,* 3 I.C.C.2d 689, 691 (1987) (emphasis added) (quoting *Carla Ticket Service, Inc., Broker Application,* 94 M.C.C. 579, 580 (1964))). And, legislative history should never be used to *create* ambiguity where the plain meaning of the text is clear.

The language of the statute, its legislative history, the regulation, and the bond all support Plaintiffs' claim that the bond covers Keystone's alleged failure to faithfully perform and fulfill its agreement "to provide a licensed and insured carrier of household goods to transport" their belongings "under a valid bill of lading…." (DE [18], ¶¶ 128, 131). Keystone and Keystone's surety are required by statute to provide the financial security to protect members of the shipping public such as the Phillips "against dishonest and financially unstable middlemen" like those alleged to have been hired by Keystone to move the Phillips' belongings.

The case of *Vantage Logistics, LLC* 2020 WL 6484054, (cited by Philadelphia) does not compel a different result. First, for the reasons discussed above, this Court disagrees with the *Vantage Logistics* court's conclusion that the bond only covers claims for unpaid freight. Second, the claim in *Vantage Logistics* involved freight damage caused by temperature abuse, not a failure to hire a legally authorized carrier. *Id.* at *3. Even under this Court's analysis of the scope of the bond, the claim in *Vantage Logistics*

would not have been covered. But in this case, Plaintiffs allege the broker failed to perform its agreement to secure an authorized motor carrier. This is a claim which, if established, would be covered by the bond. To rule otherwise would allow brokers to circumvent the regulations entirely—and render them meaningless—by hiring unscrupulous motor carriers so long as they paid them. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Philadelphia Indemnity Insurance Company's Motion to Dismiss (DE [21]) is **DENIED**. Philadelphia shall file an answer to the Amended Complaint by **NOVEMBER 22, 2021.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 8th day of November 2021.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF